IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00908-CYC

ERIC STRUMPF,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

## ORDER

**Cyrus Y. Chung, United States Magistrate Judge.**

    Defendant Colorado Department of Corrections ("CDOC") moves to dismiss, in part, plaintiff Eric Strumpf's employment discrimination and retaliation claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201 *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Because the Eleventh Amendment gives CDOC immunity from ADA Title I claims, and Title VII contains no protections against disability discrimination, those claims must be dismissed in full. Some of the retaliatory actions Strumpf alleges for his claim under the Rehabilitation Act predate his discrimination complaints, so that claim must be dismissed in part, but CDOC's other attempts to dismiss the Rehabilitation Act claim fall short. For the reasons that follow, then, CDOC's motion is granted in part and denied in part.

## BACKGROUND

    According to the Amended Complaint, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Holt v. United States*, 46 F.3d

1

1000, 1002 (10th Cir. 1995), *abrogated in part on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001), Strumpf began working for CDOC in June 2022 as its Budget & Business Operations Director. ECF No. 22 ¶ 10. Strumpf suffers from depression and disclosed this to his supervisor in March 2023. *Id.* ¶¶ 9, 12.

Six months later, Strumpf received a negative performance evaluation. *See id.* ¶¶ 13–14. He filed a dispute about the evaluation, which his supervisor never formally addressed. *Id.* ¶¶ 14, 17. Thereafter, he suffered a number of negative consequences: receipt of a Performance Improvement Plan, two corrective actions, [1] and the rescission of his appointing authority.[2] *Id.* ¶¶ 15, 18, 21. In the meantime, Strumpf continued his complaints. In November, he appealed to the State Personnel Board ("SPB") to compel a response to his evaluation dispute. *Id.* ¶ 19. He also submitted grievances to CDOC's Office of Inspector General ("OIG") and CDOC's HR department that month, as well as to the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD") in December. *See id.* ¶¶ 26, 27, 29, 31–32, 34.

None of these actions resulted in relief satisfactory to Strumpf and, in February 2024, the EEOC issued a right-to-sue letter. *Id.* ¶ 43. In April 2024, Strumpf filed this case. ECF No. 1. A month later, he was administratively discharged from his position. ECF No. 22 ¶ 58. He amended his complaint once as of right, *id.*; *see* Fed. R. Civ. P. 15(a)(1)(B), and his Amended Complaint asserts claims under Title I of the ADA, "Title VII of the Americans with Disabilities Act," and Section 504 of the Rehabilitation Act of 1973. ECF No. 22 ¶¶ 63–83.

This motion followed.

---

[1] A corrective action is a formal process, in writing, "to correct performance issues or conduct." 4 Colo. Code Reg. § 801-1, Board Rule 6-8. They "do not affect current base pay, status, or tenure." *Id.* Instead, they are issued before disciplinary actions unless an "act is so flagrant or serious that immediate discipline is proper." *Id.* Board Rule 6-2.

[2] Appointing authority grants the power to hire, fire, or otherwise discipline subordinates. Colo. Const. Art. XII § 13(8).

2

## ANALYSIS

CDOC moves to dismiss Strumpf's ADA and Title VII claims in full and his Rehabilitation Act claim in part.

### I.  ADA Title I Claim

CDOC first challenges the Court's jurisdiction over Strumpf's ADA Title I claim. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A party may therefore challenge a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A successful challenge results not in a judgment on the merits but only a determination that a federal court lacks authority to hear the matter. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Here, CDOC asserts that the Eleventh Amendment's grant of sovereign immunity divests this Court of jurisdiction. ECF No. 32 at 4–5.

That amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. While presented as a jurisdictional issue, in reality, "Eleventh Amendment immunity doctrine is not easy to characterize." *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 941 (10th Cir. 2008). "It is best understood according to its own unique identity, rather than through its similarities with other legal doctrines," *id.*, though on occasion, it is analyzed under Rule 12(b)(1). *See, e.g.*, *Gaines v. Pearson*, 516 F. App'x 724, 726 (10th Cir. 2013) ("We review a district court's Rule 12(b)(1) dismissal for lack of jurisdiction based on Eleventh Amendment immunity de novo."). In all events, regardless of the exact nature of the immunity, beyond its literal scope covering suits by citizens of other or foreign states, "[i]t is well established that under the Eleventh Amendment, sovereign immunity" also "prohibits federal courts from

entertaining suits against states brought by their own citizens . . . without their consent." *Hunt v. Colo. Dep't of Corr.*, 271 F. App'x 778, 780 (10th Cir. 2008) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). That immunity extends "to state agencies functioning as an arm of the state." *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). CDOC is a state agency. Colo. Rev. Stat. § 17-1-101. It therefore benefits from Eleventh Amendment immunity. *See Hunt*, 271 F. App'x at 781.

To be sure, "[t]he Eleventh Amendment bar to suit is not absolute." *Port Auth. Trans-Hudson Corp.*, 495 U.S. at 304. "States may," for example, "consent to suit in federal court." *Id.* Construing Strumpf's arguments liberally, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), he appears to argue that Colorado has consented to ADA Title I suits by cooperating with the EEOC and accepting federal funds directed at anti-discrimination efforts. ECF No. 36 at 2, 3. It has not. "In the absence of clear evidence that Congress intended for states to waive their immunity under the ADA by accepting federal funds," the Tenth Circuit has refused "to conclude that" a state agency "has made a clear and voluntary waiver of its sovereign immunity for ADA claims." *Levy v. Kan. Dep't of Social and Rehab. Servs.*, 789 F.3d 1164, 1171 (10th Cir. 2015). Instead, "[a] State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). And "CDOC is an agency of the State of Colorado that has not expressly waived its sovereign immunity." *Hunt*, 271 F. App'x at 781. Consent, therefore, does not apply.

"[I]n certain cases, Congress may" also "abrogate the States' sovereign immunity," *Port Auth. Trans-Hudson Corp.*, 495 U.S. at 304, and Strumpf cites several cases to argue that it did here. ECF No. 36 at 1–2. But these cases do not address Title I of the ADA. *Coger v. Board of*

4

*Regents of State of Tennessee*, 154 F.3d 296 (6th Cir. 1998), for example, addressed the Age Discrimination in Employment Act, not the Americans with Disabilities Act. And *United States v. Georgia*, 546 U.S. 151, 159 (2006), *Tennessee v. Lane*, 541 U.S. 509, 517–33 (2004), *Johnson v. State Technology Center at Memphis*, 24 F. Supp. 2d 833, 844 (W.D. Tenn. 1998), and *United States v. Colorado*, 23-cv-02538-PAB-MEH, each address Title II of the ADA. That is not Title I. "Title II . . . contains precisely no explicit references to employment discrimination," but Title I "speaks of employment discrimination expressly and throughout." *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1309 (10th Cir. 2012). Thus, "Title I, not Title II, is the proper tool for pursuing employment discrimination claims." *Id.* That tool is what Strumpf wields here; indeed, he explicitly invokes Title I. ECF No. 22 ¶¶ 1, 63–70. And it is settled law that "Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001).

Strumpf has two additional shots in his sling. The EEOC's issuance of a right-to-sue letter, he says, imbues his case with force foreclosing dismissal. ECF No. 36 at 2. But the letter, while a condition precedent to filing suit, does not guarantee a claim is viable; indeed, such a letter can issue "despite a Commission finding of no reasonable cause to believe that" there has been any violation of law. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). He also suggests that sovereign immunity violates his Fourteenth Amendment Equal Protection rights. ECF No. 36 at 2. But he cites no case so holding. For aught that appears, none exists. *Cf. Ward v. Bd. of Trs., Hutchinson Cmty. Coll.*, No. 88–1600–K, 1989 WL 57542, at *4 & n.2 (D. Kan. May 11, 1989) (holding that state sovereign-immunity statute did not violate state equal-protection guarantees).

In sum, the Eleventh Amendment grants CDOC immunity from suits for money damages under Title I of the ADA. No exceptions to that immunity apply. Because the Eleventh Amendment prohibits this Court from adjudicating Strumpf's claim, it must be dismissed without prejudice. *See Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016).

## II. Title VII Claim

CDOC next takes aim at Strumpf's claim under "Title VII of the ADA." ECF No. 22 ¶¶ 71–76; *see* ECF No. 32 at 5–6. There is no Title VII of the ADA, but in construing the pleadings of a *pro se* plaintiff, courts must do so "liberally" and against a "less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. So construed, given Strumpf's other references to "Title VII of the Civil Rights Act of 1964," ECF No. 22 ¶ 1, the claim arises under the latter set of statutes.

Even liberally construed, though, this claim cannot survive. Because Title VII contains no protections against disability discrimination or retaliation, CDOC says, a Title VII claim alleging disability discrimination "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

That is the case here. Title VII protects individuals from employer discrimination "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, Strumpf does not allege that CDOC discriminated against him because of any of these characteristics. *See* ECF No. 22. Instead, he invokes disability discrimination. Title VII also protects against retaliatory actions, but where the alleged motivation was disability-discrimination complaints, they "do not involve Plaintiff having 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' because disability is not a protected class under Title VII." *Masrouri v. Cnty. of*

6

*Riverside*, No. CV 09-1314 PA (CTX), 2009 WL 10674451, at *3 (C.D. Cal. Dec. 21, 2009) (quoting 42 U.S.C. § 2000e-3(a)).

Because Strumpf solely alleges disability discrimination and related retaliation, Title VII does not apply. And no set of repleaded facts could expand Title VII to include disability discrimination. His Title VII claim must therefore be dismissed with prejudice. *Stafford v. Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994) (allowing denial of a motion to amend when amending would be futile); *Morrison v. Beemer*, No. 21-CV-00077-STV, 2021 WL 4710304, at *3 (D. Colo. Oct. 7, 2021) (dismissing a disability discrimination claim under Title VII with prejudice).

### III.   Rehabilitation Act Section 504 Claim

CDOC seeks to dismiss, in part[3], Strumpf's Rehabilitation Act claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 32 at 1. That claim is based on eleven allegedly discriminatory or retaliatory actions:

1. A lack of response to Strumpf's performance-evaluation dispute in October 2023, ECF No. 22 ¶ 17;
2. Corrective actions on November 8, 2023, *id.* ¶¶ 18, 21;
3. A lack of corrective action against Strumpf's supervisor for dilatory action in November 2023, *id.* ¶ 20;
4. Rescission of Strumpf's appointing authority on November 8, 2023, *id.* ¶ 21;
5. CDOC's submission to a human-resources director in response to Strumpf's complaint about inaction regarding his performance-evaluation dispute, *id.* ¶ 35;
6. CDOC's response to Strumpf's complaint to the CCRD, *id.* ¶ 38;

---

[3] At the time the motion was filed, there was a related state administrative case pending before the SPB, so the motion does not address the plaintiff's accommodation and administrative separation claims under the Rehabilitation Act. *See* ECF No. 25 at 1; ECF No. 32 at 6 n.2.

7. CDOC's processing of Strumpf's internal grievance in February 2024, *id.* ¶ 42;

8. CDOC's failure to respond to Strumpf's email correspondence in February 2024, *id.* ¶ 44;

9. CDOC's determination after an internal investigation that there was no evidence of discrimination, *id.* ¶ 51;

10. A poor performance review in March 2024, *id.* ¶ 50; and

11. Strumpf's administrative discharge in May 2024, *id.* ¶ 58.

CDOC challenges actions 1 through 4 as happening before constitutionally protected activity and therefore incapable of grounding a retaliation claim. ECF No. 32 at 7–13. It also contends that actions 5 through 9 are not materially adverse actions sufficient for a retaliation claim. *Id.* at 13–16. Finally, it asserts that those actions, along with actions 2 and 4, also do not rise to the level of an adverse employment action for a discrimination claim. *Id.* at 16–19.

The standard for evaluating CDOC's challenge is well-known. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." A district court faced with a Rule 12(b)(6) motion evaluates whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, a court looks to whether "the plaintiff" has "plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A. **Retaliation Claims**

Here, the claim invokes section 504 of the Rehabilitation Act, under which "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). CDOC receives federal funding and is thus covered by the Rehabilitation Act. ECF No. 22 ¶ 79. Even though "[t]he Rehabilitation Act's prohibition on discrimination does not explicitly mention retaliation," *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007), "[t]he standard for retaliation claims under the Rehabilitation Act is the same as the standard for retaliation claims under the" ADA. *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010); *see* 29 U.S.C. § 794(d).

Thus, "[t]o state a prima facie claim for retaliation under the Rehabilitation Act, a plaintiff must sufficiently allege: '(1) that [he] engaged in protected activity; (2) that [he] suffered a materially adverse action . . . either after or contemporaneous with [his] protected activity; and (3) a causal connection between the protected activity and the adverse action.'" *Vanech v. Walsh*, No. 21-CV-02804-CMA-NYW, 2022 WL 4010014, at *4 (D. Colo. July 8, 2022), *report and recommendation adopted*, No. 21-CV-02804-CMA-NYW, 2022 WL 4010005 (D. Colo. Aug. 5, 2022) (quoting *Reinhardt*, 595 F.3d at 1131). A "materially adverse action" is action that would "dissuade a reasonable worker" from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). CDOC challenges only the first two elements of the claim.

1. <u>Protected Activity.</u>

CDOC claims that actions 1 through 4 identified above occurred prior to any protected opposition to discrimination and therefore could not have been retaliatory. A plaintiff engages in

9

protected activity when he opposes any discriminatory act or practice, or makes a charge, testifies, assists, or participates in any manner in an investigation under the Rehabilitation Act. 42 U.S.C. § 12203(a) (incorporated by reference by 29 U.S.C. § 794(d)); *Reinhardt*, 595 F.3d at 1132. To be a protected activity, then, there must have been a prior alleged discriminatory act or practice. *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1199 (10th Cir. 2023). A plaintiff must have "a reasonable, good-faith belief that the underlying conduct that [he] opposed violated" the Rehabilitation Act for his opposition to constitute protected activity. *Oliver v. Peter Kiewit & Sons/Guernsey Stone*, 106 F. App'x 672, 675 (10th Cir. 2004).

CDOC concedes that by November 21, 2023, Strumpf engaged in such opposition when he complained to the OIG. ECF No. 32 at 14. But Strumpf points to a number of earlier events, contending that they too comprised protected activity. They do not.

First, Strumpf points to his September 2023 memo disputing his negative performance evaluation. ECF No. 22 ¶ 14. CDOC attaches the memorandum to their motion, arguing that it does not allege a prior discriminatory act. *See* ECF No. 32-3. A court generally considers only the allegations of a plaintiff's complaint on a Rule 12(b)(6) motion, *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), but "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (quotation marks omitted). The complaint references the memo, ECF No. 22 ¶ 14; Strumpf does not dispute the authenticity of the attachment; thus, the document is properly considered.

Doing so shows that Strumpf does not allege disability discrimination therein. *See* ECF 32-4. Rather, he states he is "at a loss to understand what is behind" his negative evaluation. *Id.*

10

at 6. That may oppose negative treatment generally, but it does not oppose disability discrimination. *See id.* Therefore, the September 2023 dispute memo is not protected activity.

Second, Strumpf invokes his November 8, 2023 appeal to the SPB. ECF No. 22 ¶ 19. But the appeal itself, properly considered here for the same reasons as the September 2023 dispute memo, does not mention discrimination. ECF No. 32-5 at 1–8.[4] Indeed, Strumpf left blank every checkbox that could have alerted CDOC to violations of the Colorado Anti-Discrimination Act. *Id.* at 4. Instead, he only complained of the same non-specific negative bias mentioned in his dispute memo. *Id.* at 3. That will not do.

Third, Strumpf stated that he was "being targeted and attacked" as he took emergency leave in November 2023. ECF No. 22 ¶ 22. But he specified no discriminatory reason for the "attack" and, thus, the communication did not comprise protected opposition to discrimination.

Finally, Strumpf submitted an additional grievance on November 14, 2023 to his supervisory chain that requested "an investigation into" but did not allege "the intent behind" negative actions toward him. ECF No. 32-6 at 8. By definition, then, it did not specify that the intent was disability discrimination. It did mention his depression in passing, but only to fault Strumpf's supervisor for a lack of "compassionate leadership," not to allege discrimination based on that depression. *Id.* at 4.

The short of it is that Strumpf did not allege discrimination as animating his negative treatment until his OIG complaint on November 21, 2023. Accordingly, that comprises the first

---

[4] Both this document and ECF 32-6 contain a large number of attachments the plaintiff originally attached to them in support of his appeal and grievance. The Court considers only the portions of these documents that relate to the fact of their filings and the reasons asserted for their filings. *See* ECF Nos. 32-5 at 1–8; 32-6 at 1–8.

11

protected activity alleged in this case. Thus, events before that date, actions 1 through 4, could not have been retaliatory under the Rehabilitation Act.[5]

   2. <u>Materially Adverse Action.</u>

CDOC contends that none of the events following the OIG complaint constitute materially adverse actions. Taken in isolation, the argument has some appeal. Actions 7 through 9, for example, complain that CDOC's internal investigation of the plaintiff's complaints was half-hearted and therefore retaliatory. But "inadequately investigating a complaint" internally "is not, without more, a materially adverse action." *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025). The plaintiff also asserts that false statements from CDOC to SPB and CCRD investigators — actions 5 and 6 — are retaliation. ECF No. 22 ¶¶ 35, 38. But courts have found that similar allegations of false statements to the EEOC "would not deter a reasonable worker from making or supporting a charge of discrimination." *Paugh v. Lockheed Martin Corp.*, 474 F. Supp. 3d 861, 866–67 (W.D. Tex. 2020).

Strumpf, however, contends that these actions along with others collectively constitute a materially adverse action. ECF No. 36 at 6. Liberally construed, *Hall*, 935 F.2d at 1110, this invokes the Tenth Circuit's recognition that "[t]here may be circumstances where inconveniences, alterations of job responsibilities, lower performance reviews, and insufficient recognition for outstanding work considered individually are insufficient to demonstrate" a materially adverse action, "yet when considered together, amount to" one. *Stover v. Martinez*, 382 F. 3d 1064, 1075 (10th Cir. 2004). CDOC raises no argument that Strumpf's claim fails

---

[5] Action 3 was also alleged in Strumpf's November 14, 2023 grievance, ECF No. 32-6 at 4–5, dating it before the November 21, 2023 protected activity.

under *Stover*, *see* ECF Nos. 32, 38, and a court "cannot make a party's arguments for him." *Santucci v. Commandant, U.S. Disciplinary Barracks*, 66 F.4th 844, 869 (10th Cir. 2023).

Instead, CDOC characterizes Strumpf's argument as a wrongful attempt to amend his complaint. ECF No. 38 at 10–11. It is true that Strumpf generally cannot use his Response for that purpose. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). But a court may "consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint." *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001). Strumpf's Response alleges no new facts, and his aggregation argument relies only on the allegations of his Amended Complaint, which hints repeatedly that Strumpf intends an aggregation claim. *See, e.g.*, ECF No. 22 ¶¶ 27 (alleging an "escalation of abusive personnel actions . . . retaliatory in nature" and a "pattern of disregard and abuse"), 44 (alleging financial pressure as part of CDOC's "strategy . . . of retaliation"), 69, 75, and 82 (alleging CDOC's "egregious, severe, and pervasive conduct"). The argument is therefore properly considered.[6]

In theory, the Court could still dismiss the claim "under Rule 12(b)(6)" if "(1) it is patently obvious that the plaintiff could not prevail on the facts alleged; and (2) allowing [the plaintiff] an opportunity to amend his complaint would be futile." *Phillips v. Pub. Serv. Co. of N.M.*, 58 F. App'x 407, 409 (10th Cir. 2003) (quotation marks omitted). But where actions 10 and 11, unchallenged by CDOC at this stage, allege a falsely exaggerated negative performance review and a retaliatory discharge, ECF No. 22 ¶¶ 50, 58, it is difficult to say that the retaliation

---

[6] Strumpf's aggregation argument lists several actions both before and after the protected activity. ECF No. 36 at 6. For retaliation, the Court is only considering actions after the protected activity in its aggregation: actions 5 through 11.

claim's dismissal is patently obvious. CDOC may contend that it fails to meet legal standards at some later time, but that is an issue for another day.

To sum up, Strumpf's retaliation claim cannot be based on actions 1 through 4 because those occur prior to any protected activity. To the extent it is based on other actions, the claim survives. Given Strumpf's assertion of the claim as being based on actions that, in the aggregate, are materially adverse, there is no need to parse through the challenges to each discrete action. *See FTC v. Nudge, LLC*, F. Supp. 3d 1230, 1246 nn.121–22 (D. Utah 2019) (explaining that partial dismissal of claims is not appropriate under Rule 12(b)(6)).

### B. Discrimination Claim

To state a claim for discrimination under the Rehabilitation Act, Strumpf must allege that "(1) he is disabled; (2) he is qualified to perform the essential functions of the job with or without accommodation; and (3) he suffered an adverse employment action because of his disability." *Hampton*, 87 F.4th at 1197. CDOC levies a challenge only to whether Strumpf suffered an adverse employment action. ECF No. 32 at 7–13. The Tenth Circuit "liberally define[s] the phrase adverse employment action, but still requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 1199 (quotation marks omitted).

CDOC specifically contends that actions 2 and 4 described above are not adverse employment actions. Although those actions could not be retaliatory because they predate any alleged protected activity, that particular bit of timing does not apply to a discrimination claim. Here, Strumpf plausibly alleges that action 4, the rescission of his appointing authority, was an adverse employment action.

14

Strumpf worked as the Budget & Business Operations Director for CDOC, where he supervised over 100 employees. ECF Nos. 22 ¶ 10, 32-6 at 6. Rescission of Strumpf's hiring and firing authority, then, takes away his ability to hire, fire, or discipline his over 100 employees. That ability to discipline was a regular part of his job, as he alleges that he had just finished an evaluation dispute with a subordinate when his appointing authority was removed. ECF No. 32-6 at 6. And that authority is important enough that, at certain levels, the Colorado Constitution explicitly specifies who bears it. Colo. Const. Art. XII §§ 13(7), (8). The Amended Complaint, then, plausibly alleges that such rescission constitutes a significant change in employment status. *See, e.g.*, *Brown v. Chicago Transit Auth.*, 2020 WL 777296, at *12 (N.D. Ill. Feb. 14, 2020) (noting that "[a] jury could find that" removal of "disciplinary authority . . . significantly diminished [the plaintiff's] material responsibilities" (citing *Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2012))).

CDOC resists this conclusion, citing *Hampton v. Utah Department of Corrections*, 87 F.4th 1183 (10th Cir. 2023). But Strumpf's case is far afield from a security guard complaining that he, contrary to his preferences, received an unarmed position instead of an armed one. *Id.* at 1189, 1199. Rescission of Strumpf's appointing authority plausibly handicaps his ability to lead his division and affects his responsibilities in a way distinguishable from the decision to let a security guard carry a weapon.

CDOC also challenges action 2, the corrective actions issued to the plaintiff. Those actions "do not alone constitute adverse employment actions in that they [do] not materially effect [sic] Plaintiff's job status." *Luchaco v. Colo. State Patrol*, No. 08-cv-02348-LTB-KMT, 2010 WL 3430850, at *8 (D. Colo. Aug. 30, 2010) (citing *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006)). But, again, the plaintiff indicates that his claim does not

15

rest solely upon the actions in isolation but instead in the aggregate with other negative actions. In the discrimination context, this aggregation is best understood as a claim premised on a hostile work environment. *See Lujan v. Johanns*, 181 Fed. App'x. 735, 737–38 (10th Cir. 2006) ("[The plaintiff] argues, however, that considered in the aggregate, [the adverse actions] created a hostile work environment which constitutes an adverse employment action."). CDOC makes no argument as to the actual sufficiency of the plaintiff's allegations with the claim so construed, *see Hall*, 935 F.2d at 1110; *Cunningham v. Software*, No. 1:22-CV-00882-DDD-MDB, 2024 WL 2194137, at *4 (D. Colo. Apr. 8, 2024) (liberally construing a pro se plaintiff's complaint to plead a hostile work environment, even over the plaintiff's insistence he did not), and the Court will not do so on CDOC's behalf. Nor is it "patently obvious" that such corrective actions, alongside ten other alleged adverse actions and an allegation of discriminatory termination, would not allege a hostile work environment such that sua sponte dismissal would be appropriate, especially where rescission of Strumpf's appointing authority alone could constitute an adverse employment action.

Instead, CDOC again claims that this is amendment in a motion response by surprise. But the plaintiff specifically used the words "hostile work environment," in his complaint, ECF No. 22 ¶ 42, and alleged "egregious, severe, and pervasive" discriminatory conduct, *id.* ¶ 82. He is "not required to plead with precision legal theories or detailed facts," *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 567 (7th Cir. 2012) (finding that "hostile-work-environment claim was properly raised in the complaint" even though "the complaint d[id] not use the words 'hostile work environment'"), and, thus, his allegations sufficed to put CDOC on notice of the claim.

**CONCLUSION**

For the foregoing reasons, it is hereby ORDERED that the defendant's Motion to Dismiss, ECF No. 32, is GRANTED in part and DENIED in part.

It is further ORDERED that Count 1, the plaintiff's claim brought under Title I of the Americans with Disabilities Act, is dismissed without prejudice.

It is further ORDERED that Count 2, the plaintiff's claim brought under Title VII of the Civil Rights Act, is dismissed with prejudice.

It is further ORDERED that the plaintiff's retaliation claim in Count 3 brought under the Rehabilitation Act is dismissed without prejudice to the extent it relies upon allegedly materially adverse actions before November 21, 2023 (actions 1 through 4).

The remainder of CDOC's motion to dismiss Count 3, the plaintiff's Rehabilitation Act claim, is DENIED.

Dated this 11th day of July, 2025, at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge